**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| JOSEPH TERRELL RAMEY,<br>ADC #87050,<br><br>Plaintiff, | * | |
| v. | * | No. 4:25-cv-00408-JJV |
| ERIC HIGGINS, Sheriff,<br>Pulaski County Detention Facility, *et al.*<br><br>Defendants. | * | |

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

Plaintiff Joseph Terrell Ramey says that, while he was a convicted prisoner at the Pulaski County Regional Detention Facility ("PCRDF"), Defendants violated his Eighth Amendment rights as protected by 42 U.S.C. § 1983 when he was injured in a car accident that occurred on September 11, 2023. (Doc. 2.) Plaintiff has brought this suit against Deputy Sherry Brown, Sheriff Eric Higgins, Deputy Kawhun Tims, and Deputy Dedrick Rimmer. (*Id.*). Plaintiff brings these claims against the County Defendants in their personal and official capacities. (*Id*. at 2.) He seeks monetary damages, as well as an injunction and declaratory relief. (*Id.* at 18.) However, because Plaintiff is no longer in the PCRDF, his requests for an injunction and declaratory relief are now moot. *See Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999).

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity and judgment as a matter of law. (Docs. 50–52, 54). Plaintiff has filed several

responses (Docs. 59-61, 63, 67, 75[1]), and Defendants have replied (Doc. 70). After careful review, and for the following reasons, the Motion for Summary Judgment is GRANTED. Plaintiff's claims are DISMISSED with prejudice.

## II. SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC*, 76 F.4th 753, 757 (8th Cir. 2023).

## III. FACTS

On September 11, 2023, Deputy Brown drove a bus full of PCRDF inmates to the Pulaski County Circuit Court. (Doc. 52, Ex. C, p. 1). Inside the bus were Deputy Brown, Deputy Christopher King, Deputy Travis Riggs, and thirty-two inmates. (Doc. 52, Ex. A4, p. 3). As a

[1] On August 24, 2026, Plaintiff filed an additional response to the Defendants' Motion for Summary Judgment. (Doc. 75). That response, however, will not be considered by this Court because it exceeds the August 1, 2026, deadline to file a response to Defendants' Motion for Summary Judgment. (Doc. 58).

method of protection, all inmates were fully restrained. Their legs were shackled together; they were also handcuffed to belly chains. (Doc. 2, p. 4). Plaintiff was not wearing a seatbelt. (*Id.* at 7). In fact, the PCRDF bus was not outfitted with any seatbelts. (Doc. 52, Exs. C, D). While attempting to turn right from Chester Street onto Markham Street, a black Toyota Prius collided with the PCRDF bus. (Doc. 52, Ex. C, p. 1). Although there is dispute between the parties regarding whether Deputy King's turn was legal, such dispute is not a genuine one of material fact. As a result of the collision, Plaintiff was launched from his seat, where he struck the metal cage separating the front and back portions of the bus. (Doc. 2, p. 4). Plaintiff sustained a laceration to his nose, which promptly began to bleed. (*Id.*)

Little Rock Police and MEMS were dispatched to the site of the wreck. (Doc. 52, Ex. A4, p. 7). After giving statements to the Little Rock Police, the Deputies decided, for reasons of public safety, to continue taking the inmates to the courthouse and have them checked out there. Once the inmates were delivered to the Pulaski County Circuit Courthouse, MEMS assessed every inmate. (Doc. 52, Ex. A4, p. 1–5). Deputy Riggs's body camera footage showed Plaintiff, in which he did not appear to have a serious injury. (Doc. 52, Ex. A5, 07:58:00–07:59:00). Nor did Plaintiff complain to Deputy Riggs about intense pain or other issues. (*Id.*).

From the thirty-two transported, MEMS determined that only two inmates needed further attention. (Doc. 52, Ex. A4, p. 1–5). Both were transported to UAMS where they were cleared to return to the facility. (Doc. 52, Ex. A4, p. 1–5). After court, Plaintiff was returned to the facility. (Doc. 2, p. 5). On September 13, 2023, Plaintiff was examined by Courtney Fennel. (Doc. 52, A3, p. 89). Seemingly during that same visit, Nurse Lauren Messersmith ordered Plaintiff to be taken to UAMS. (*Id.*). She noted in her report, "Due to the MVA, he was ordered to be sent to the hospital to be cleared before returning to the facility but was not sent." (*Id.*). Deputies Tim and

Rimmer transported Plaintiff to UAMS. (Doc. 2, p. 6). However, once there, Plaintiff noted, "the emergency room refused to see me, and he sent me back without treatment. the [sic] emergency room doctor told deputy remmer [sic] and deputy tims that he was tired of messung [sic] with these people." (Docs. 52, Ex. A2). Deputies Tim and Rimmer transported Plaintiff back to the facility. (Doc. 2, p. 6).

From there, Plaintiff placed several complaints, requesting medical attention. (Doc. 52, Exs. A2–A3, B). At each point, Plaintiff was seen and given treatment. (*Id.*). During some of the visits, medical officials noted that Plaintiff did not seem receptive to their suggestions. (Doc. 52, Ex. B, p. 30–31). However, Deputies Tim and Rimmer were not involved in any of Plaintiff's subsequent complaints. On April 28, 2025, Plaintiff brought this suit.

## IV. ANALYSIS

Pursuant to the Prison Litigation Reform Act, this Court previously screened Plaintiff's complaint and distilled it into a handful of Eighth Amendment claims. (Doc. No. 3). Sheriff Higgins, Deputy Brown, Deputy Tims, and Deputy Rimmer are all sued in both their individual and official capacities. Accordingly, Plaintiff's individual capacity claims can be boiled down to (1) a condition of confinement claim against Deputy Brown and Sheriff Higgins; and (2) an inadequate medical care claim against Deputies Tims and Rimmer. Official capacity claims are treated as claims against the municipality for which the defendant works–here Pulaski County. *See Hall v. Higgins*, 77 F.4th 1171, 1178 (8th Cir. 2023); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Accordingly, Plaintiff necessarily brings a *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) liability claim against Pulaski County. Throughout Plaintiff's responses to Defendants' Motion for Summary Judgment, he includes other claims that were not in his initial pleading, and those will not be considered. (Docs. 59–61).

**A. Individual Capacity Claims**

Defendants argue they are entitled to qualified immunity from Plaintiff's Eighth Amendment claims. Qualified immunity bars the recovery of monetary damages from government officials in their personal capacities if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019). Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of his Eighth Amendment rights; or (2) the particular Eighth Amendment right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *MacKintrush v. Pulaski Cnty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). If there is no evidence of a constitutional violation, then the analysis ends, and the defendants are entitled to dismissal. *Jones v. Faulkner Cnty.*, 131 F.4th 869, 874 (8th Cir. 2025); *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024).

**1. Conditions of Confinement Claim Against Deputy Brown**

In short, Defendants assert that the seat-beltless bus did not pose a substantial risk of serious harm. Further, they assert that Deputy Brown did not deliberately disregard the risk of Plaintiff's safety. Lastly, and in addition, Defendants argue that Deputy Brown's actions were negligent at best, which is not an appropriate basis for § 1983 liability. I agree.

The Constitution does not mandate comfortable imprisonment. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As such, only "extreme

deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis" of an Eighth Amendment violation. *Id.* So, a plausible Eighth Amendment claim must provide facts suggesting: (1) objectively, the conditions endured constituted a serious risk of serious harm to his health or safety; and (2) subjectively, the defendant was deliberately indifferent to the risk of harm posed by the conditions. *Hamner v. Burls*, 937 F.3d 1171, 1178 (8th Cir. 2019). Deliberate indifference is a stringent standard of fault that is a much taller order than mere negligence, or even gross negligence. *See Joseph v. Wheeler*, 144 F.4th 1111, 1114 (8th Cir. 2025). Ultimately, negligence, or even gross negligence, is not sufficient to maintain a cause of action under 42 U.S.C. § 1983. *Roach v. City of Fredericktown, Mo.*, 882 F.2d 294, 297 (8th Cir. 1989); *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 910 n.5 (8th Cir. 2020).

From the facts alleged by both parties, it is not clear whether Deputy Brown's right turn was proper. Even so, Deputy Brown's actions there would indicate negligence at worst. Plaintiff has not offered any evidence, as is his burden, to demonstrate that Deputy Brown was deliberately indifferent to his safety. Deputy Brown took a right turn that resulted in a motor vehicle accident. While this is unfortunate, that does not suggest any intent to be deliberately indifferent. Negligence is not enough to state a § 1983 claim. *See Roach*, 882 F.2d at 297; *Stearns*, 97 F.3d at 910 n.5.

Considering the foregoing evidence, the Court concludes that Deputy Brown, at most, was negligent in driving the PCRDF bus. Accordingly, Deputy Brown is entitled to qualified immunity because she was not deliberately indifferent to any risk posed to Plaintiff.

**2. Conditions of Confinement Claim Against Sheriff Higgins**

Defendants assert essentially the same arguments for Sheriff Higgins as they did for Deputy Brown. The Court agrees that Sheriff Higgins is not liable. Sheriff Higgins, he was not personally

involved in the motor vehicle accident. *See Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005) ("But § 1983 liability is personal."). Moreover, employer vicarious liability, *respondeat superior*, is not a valid claim under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *St. v. Leyshock*, 41 F.4th 987, 989 (8th Cir. 2022). This means that Sheriff Higgins cannot be held liable merely because he employs the individuals who allegedly failed to provide constitutionally adequate conditions of confinement. *See De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 804 (8th Cir. 2022). Instead, Sheriff Higgins can only be held liable if he received notice of a pattern of unconstitutional conduct but failed, with deliberate indifference, to take sufficient remedial measures. *McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020). That is not the case here.

Plaintiff has not offered any evidence to demonstrate that Sheriff Higgins *knew* Deputy Brown had any history of driving with deliberate indifference. In fact, Sheriff Higgins stated in his affidavit that he was unaware that the buses were not outfitted with seatbelts until this suit was filed. (Doc. 52, Ex. D, p.3, ¶9). Importantly, Plaintiff has not come forward with any evidence to the contrary. Thus, Sheriff Higgins is entitled to qualified immunity.

**3. Inadequate Medical Care Claim Against Deputies Tims & Rimmer**

Defendants assert that Plaintiff neither had a serious medical need, nor did Deputies Tims and Rimmer disregard any such medical need. I agree. "The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Dantzler v. Baldwin*, 133 F.4th 833, 843 (8th Cir. 2025). To proceed to trial on an inadequate medical care claim, prisoners must have evidence that: (1) they had an objectively serious need for medical care; and (2) prison officials subjectively knew of, but deliberately disregarded, that serious medical need. *Id.*; *see Jones v. Faulkner Cnty.*, 131 F.4th 869, 874 (8th Cir. 2025). An objectively serious medical need is one that has been "diagnosed by a physician as requiring treatment" or one "so obvious that even

a layperson would easily recognize the necessity for a doctor's attention." *Presson v. Reed*, 65 F.4th 357, 366 (8th Cir. 2023). Deliberate indifference, which is a standard higher than gross negligence, requires evidence prison officials "recognized that a substantial risk of harm existed and knew that their conduct was inappropriate in light of that risk." *Smith v. Lisenbe*, 73 F.4th 596, 660 (8th Cir. 2023) (emphasis in the original); *Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023).

Plaintiff's claim against Deputies Tims and Rimmer fails. Plaintiff has not offered any evidence to show that he had an objectively serious need for medical care. As seen from Deputy Riggs's body worn camera, Plaintiff did not exhibit any signs of intense medical need. Although the laceration on his nose was bleeding, it was not sufficiently serious enough to satisfy the first prong. On Deputy Riggs's body camera footage, Plaintiff did not complain about pain. His gait did not demonstrate an outward manifestation of pain. Truly, his appearance would not have led any person to believe that he had a serious injury or a serious medical need.

Even if he had an objectively serious need for care, Plaintiff certainly failed to satisfy prong two. Plaintiff was examined by MEMS and cleared to return to PCRDF. On September 13, 2023, Nurse Messersmith ordered that Plaintiff be taken to UAMS. Plaintiff was transported to UAMS but, by Plaintiff's own account, was turned away by emergency room personnel. He says, "[T]he emergency room refused to see me, and he sent me back without treatment. the [sic] emergency room doctor told deputy remmer [sic] and deputy tims that he was tired of messung [sic] with these people." (Docs. No. 52, Ex. A2).

Further, Plaintiff has not offered any evidence to show Deputies Tims's or Rimmer's involvement in the decision for UAMS to reject him. The Deputies followed orders from the hospital and transported Plaintiff back to PCRDF. After returning to PCRDF, Plaintiff took

advantage of the in-house medical team and was examined several times after the UAMS visit. In none of those visits was it apparent that Plaintiff had a serious medical need, or that one gradually came into existence. Truly, it seems to this Court that Plaintiff did not agree with the course of treatment prescribed to him. Simply disagreeing with the course of one's medical treatment fails to state a cognizable claim under the Eighth Amendment for deliberate indifference. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). Defendants, then, are entitled to qualified immunity as they were not deliberately indifferent to Plaintiff's health.

**B. Official Capacity Claim Against Pulaski County[2]**

Defendants argue that the Pulaski County's policy regarding the seat-beltless bus does not amount to *Monell* liability. I agree. An official capacity claim against county officials must be treated as a suit against the County itself–here, Pulaski County. *Hall v. Higgins*, 77 F.4th 1171, 1178 (8th Cir. 2023); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018). Because vicarious liability is not actionable under § 1983, Pulaski County can only be held liable if the constitutional violation resulted from: (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Partridge v. City of Benton, Arkansas*, 157 F.4th 970, 973 (8th Cir. 2025); *Leftwich ex rel. Leftwich v. Cnty. of Dakota*, 9 F.4th 966, 972 (8th Cir. 2021).

Generally, one incident is not enough to put the county on notice that a practice is resulting in a constitutional violation. *See Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) (collecting cases of one or two incidents); *Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018).

---

[2] Unlike the individual defendants, counties and municipalities cannot raise the qualified immunity defense. *Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020); *Mogard v. City of Milbank*, 932 F.3d 1184, 1192 (8th Cir. 2019). Instead, Pulaski County seeks judgment, as a matter of law, under Fed. R. Civ. P. 56.

Even so, where a claim against the individual defendants fails under prong one of qualified immunity – like we have here - then the *Monell* claim fails as a matter of law. *See Starks v. St. Louis Cnty.*, 159 F.4th 1146, 1151 (8th Cir. 2025); *Patridge v. City of Benton, Arkansas*, 157 F.4th 970, 973 (8th Cir. 2025).

Even so, Plaintiff says the County had an unconstitutional policy or practice of not providing seatbelts on the PCRDF transport bus. The Court, however, does not find the policy to be unconstitutional. In *Spencer v. Knapheide Truck Equipment Co.*, the Eighth Circuit articulated:

> Thus, even using an objective standard, we do not think that the Board's purchase of patrol wagons without safety restraints nor its manner of transporting individuals in these wagons were policies that obviously presented a "substantial risk of serious harm." This is particularly true in light of the fact that, at the time of Spencer's arrest, the Kansas City, Missouri, Police Department had guidelines in place which instructed its officers to exercise caution when transporting individuals in the patrol wagon. Though these guidelines may not have been adequate to prevent injuries, their failures, if any, constitute negligence at most.

183 F.3d 902, 906 (8th Cir. 1999). So, merely having a policy of transporting inmates in a vehicle without seatbelts is not enough to present safety concerns. *Id.*; *see also Stark v. Lee Cnty., Iowa*, 993 F.3d 622 (8th Cir. 2021) (reaffirming the holding of *Spencer v. Knapheide Truck Equipment Co.*).

Until Plaintiff filed this lawsuit, Sheriff Higgins was not aware of the manner in which inmates were transported from the PCRDF. (Doc. 52, Ex. D, p. 3–4). The PCRDF bus does not have seatbelts for the passengers in the back. (*Id.* at 4). The bus that is the topic of this suit is generally used to transport inmates to the Pulaski County Circuit Courthouse. (*Id.*). The route taken is less than five miles, roughly thirty to thirty-five miles per hour, taking approximately ten minutes. (*Id.*). All inmates on the bus are chained together, rather than in seatbelts. (*Id.*). So, the rationale goes, not only would it be impractical to buckle every inmate, but also reaching to buckle

everyone could result in harm to the deputy performing the task. "Additionally, inmates may have received unfavorable news or sentences during their Court [sic] appearance, and a seatbelt could be used as a weapon or a ligature." (*Id.*).

In either vein, Plaintiff has not offered sufficient evidence to support a claim of *Monell* liability. Plaintiff has not offered any evidence of a pattern of inmates being physically harmed due to the lack of seatbelts. Accordingly, Pulaski County is entitled to summary judgment as a matter of law and should be dismissed from this cause of action.

**V. CONCLUSION**

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. 50) is GRANTED, Plaintiff's claims against Defendants Higgins, Brown, Tims, and Rimmer, in both their official and individual capacities, are DISMISSED without prejudice, and this case is CLOSED.

2. I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order as well as the accompanying Judgment would not be taken in good faith.

DATED this 15th day of October 2026.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE